Center Contracting Corp. v. Commissioner.
Center Contr. Corp. v. Commissioner
Docket No. 110152.
United States Tax Court
1943 Tax Ct. Memo LEXIS 338; 1 T.C.M. (CCH) 984; T.C.M. (RIA) 43196; April 28, 1943
*338 Sanford H. Cohen, Esq., and Maxwell Zabelle, C.P.A., 1776 Broadway, New York City, for the petitioner. Thomas R. Charshee, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves an income tax deficiency determined by the Commissioner for the taxable period April 1, 1939, to August 31, 1939, in the amount of $11,758.51. The sole issue is whether the petitioner is taxable with the amount of profit realized on a construction contract which was completed in the taxable period. Some of the facts have been stipulated. We adopt the stipulation and incorporate the same herein by reference, as part of our findings of fact. Such parts thereof as are necessary to an understanding of the issue are included in our findings of fact made also from evidence submitted at the hearing. Findings of Fact The petitioner was incorporated on April 8, 1938, under the laws of the State of New York. It maintained its principal office in New York City, and filed its federal income tax return for the taxable period with the collector for the third district of New York. Airport Land Corporation, also a New York corporation, had incorporated the petitioner, *339 and owned all of its capital stock. In 1938, the Airport Land Corporation was the owner of about 76 acres of land in Jackson Heights, New York, upon which it proposed to construct a large scale housing development. In order to finance the work, it attempted to procure a loan of approximately $3,000,000, to be insured by the Federal Housing Administration. Because no lending institution was found which was willing to place so large an amount in a single loan, the building project was divided into three separate projects, or portions, and three corporations were organized, each to undertake one. One of the three corporations was Second Garden Bay Manor, Inc. It was incorporated on February 7, 1938, and all of its stock was issued to Airport Land Corporation in exchange for a conveyance of the land upon which its project was to be erected, and a payment of about $60,000. After the formation of Second Garden Bay Manor, Inc., it was proposed that that corporation secure a construction loan to finance its part of the project, and that Airport Land Corporation undertake the actual work of construction as the contractor. During the negotiations with the Federal Housing Administration for *340 insurance of the loan, it was learned that if Airport Land Corporation were the contractor, a substantial cash bond would be required, and the only way such a bond could be avoided was to form a new corporation that would have no other involvement. Accordingly, the petitioner was formed under the Business Corporation Law of New York. Airport Land Corporation paid $35,000 for the issuance to it of all of the petitioner's capital stock. On April 15, 1938, the petitioner executed a contract by which it undertook to perform the construction work on the Second Garden Bay Manor project for the sum of $826,059, plus $23,941, therein referred to as a fixed cash fee for services, and for a further fee to consist of 420 shares of the common stock of Second Garden Bay Manor, Inc. On the same day, at the first meeting of the petitioner's directors, it was resolved that a letter of assurance be delivered to the Federal Housing Administrator to the effect that petitioner would not engage in any other business so long as its contract with Second Garden Bay Manor, Inc. was outstanding. Such a letter was delivered. Also on April 15, 1938, a loan agreement was entered into by Second Garden Bay Manor, *341 Inc., the Union Central Life Insurance Co., and the Federal Housing Administrator, under which the insurance company agreed to loan to Second Garden Bay Manor, Inc., for use in the building project, the sum ofe $850,000, to be secured by a first mortgage on the property. By the same agreement, the Federal Housing Administrator agreed to insure sums advanced on the loan in accordance with the provisions of a mortgage insurance contract to be subsequently executed. The petitioner commenced construction work during its fiscal year ended March 31, 1939, and completed the project during the period April 1, 1939 to August 31, 1939. Petitioner received payment of the sums of $826,059 and $23,941, aggregating $850,000, to which it was entitled under its contract, out of which it paid total construction and operating costs of $788,113.10. On June 27, 1939, the petitioner dissolved. Thereupon it distributed to Airport Land Corporation in complete liquidation, the sum of $61,886.90 representing the excess of its receipts under the contract over total costs, and the additional sum of $35,000 which it had received in payment for the issuance of its capital stock. No business was ever transacted *342 by the petitioner other than in connection with its construction contract with Second Garden Bay Manor, Inc. After completion of the petitioner's contract, the remaining two portions of the original project were undertaken by the corporations formed for that purpose. Airport Land Corporation was the contractor for both. It sustained a substantial loss from its operations under the latter two contracts. On its income tax return for its fiscal year ended March 31, 1939, the petitioner reported no taxable income, but endorsed the following statement upon page 1 of the return: Return is being prepared on long term completed contract basis. The only contract under-taken by the corporation was uncompleted at the close of this fiscal year. On its return for the taxable period here involved, the petitioner reported no taxable income. In an attached statement, it reported receipt of $850,000 under its construction contract, the disbursements on account of construction and other costs, the amounts distributed in liquidation to Airport Land Corporation, and made claim that the $61,886.90 so distributed should be regarded as a reduction in the cost of the stock of Second Garden Bay Manor, *343 Inc., to Airport Land Corporation, rather than as profit on an independent construction contract. The respondent determined that the profit of $61,886.90 on the contract constituted income taxable to the petitioner. Opinion We have here to decide but one question, namely, whether by the petitioner, under its construction contract with Second Garden Bay Manor, Inc., are taxable to the petitioner or to its parent, Airport Land Corporation. The petitioner contends that it was organized and operated as the agency or tool of its parent, exclusively for the purpose of executing the construction contract on the Second Garden Bay Manor project, and that since it was dissolved immediately after that purpose was accomplished, its corporate entity should be disregarded and its earnings be considered, for tax purposes, as those of its parent. Under the facts presently before us, we think the petitioner must fail. That there exist cases in which corporate entities have been ignored is common knowledge. Some of them are cases in which that treatment has been advantageous to the taxpayer. See, e.g., ; ; *344 ; and . But disregard of the general rule requiring recognition of the separate identity of a corporation and its stockholders is proper only in "exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights." . In , the Supreme Court recognized that exceptions from the rule might be required in "unusual cases." The court in the North Jersey Title Insurance Co. case held that equity demanded that the separate entity of a subsidiary corporation be disregarded particularly under the "peculiar circumstances" surrounding that case. In the instant proceeding, the petitioner was formed for the express purpose of engaging in business for profit. It is true that it was wholly owned by the Airport Land Corporation and that the only business actually conducted consisted of the carrying out *345 of a construction contract. Nevertheless, the performance of that contract constituted doing business. The project was a large scale housing development, the construction of which extended over a period of more than a year, and the cost of which ran into almost $800,000. The petitioner's income tax returns and the statements attached thereto disclose that it paid salaries and wages of about $69,500, entered into sub-contracts at an aggregate cost of over $600,000, purchased lumber and materials costing more than $70,000, maintained a home office and a field office, and expended substantial sums for telephone, stationery, advertising, entertainment, legal fees, and for other services and equipment. Moreover, the evidence shows that Airport Land Corporation could not itself have acted as construction contractor without furnishing bond, and that petitioner was formed to undertake the contract in order to avoid that expense. The parent corporation was then very much interested in having the Federal Housing Administrator recognize the petitioner's separate identity, and presumably was successful in doing so. Under such circumstances, we think the following statement of the Supreme Court *346 in to be particularly appropriate: * * * A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to some business as a corporation, he must accept the tax disadvantages. Airport Land Corporation chose to create and hold out petitioner as a corporation different and separate from itself. In view of its losses sustained on its other projects it would now be to its advantage to have the petitioner regarded as its mere agent or tool and petitioner's separate identity looked upon as unreal. This is no case of primarily holding title for another corporation transacting business, but one where the object was transaction of business. Though the purpose of incorporation was the one construction contract, the corporate powers involved in the articles of incorporation are not shown by the record. That other business may have been contemplated is indicated by the fact that assurance was given to the Federal Housing Administrator that the petitioner would not engage in any other business "so long as its contract with Second Garden Bay Manor, Inc., remained outstanding." Thereafter the petitioner *347 might have conducted other business, and that fact is not to be wholly disregarded. We are unable to find here such "peculiar circumstances" or "exceptional situations" as would justify our treatment of the petitioner as not an entity, requiring the taxation of income which it actually earned to another corporation. In the very recent case of a corporation was formed by a contractor who had an extensive contract for the erection of a building. The corporation took over the contract and completed it. Though the corporation was not, as in this case, then dissolved, the circumstances are in many respects similar to those here involved. We denied the Commissioner's contention that corporate entity should be disregarded. In this case, too, the corporation "carried on business operations in the usual and normal manner." Accordingly, we sustain the determination of and the statements attached thereto Decision will be entered for the respondent.